UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DENNIS W. GARZONE**<br>130 S. Plymouth Ave.<br>Rochester, NY 14614<br><br>　　　　　Plaintiff,<br>v.<br><br>**SERGEANT SHAWN EDWARDS**<br>c/o Monroe County Sheriff's Office<br>130 S. Plymouth Ave.<br>Rochester, NY 14614<br><br>**DEPUTY ALEXANDRA BAKER**<br>c/o Monroe County Sheriff's Office<br>130 S. Plymouth Ave.<br>Rochester, NY 14614<br><br>**DEPUTY NICHOLAS STARR**<br>c/o Monroe County Sheriff's Office<br>130 S. Plymouth Ave.<br>Rochester, NY 14614<br><br>**DEPUTY CLAYTON HILLEGEER**<br>c/o Monroe County Sheriff's Office<br>130 S. Plymouth Ave.<br>Rochester, NY 14614<br><br>　　　　　Defendants. | **COMPLAINT AND<br>JURY DEMAND**<br><br>Civil Action No. 25-6679 |

Plaintiff, Dennis W. Garzone ("Plaintiff"), by and through his attorneys, Rupp Pfalzgraf LLC, as and for their complaint against defendants, Sergeant Shawn Edwards ("Edwards"), Deputy Alexandra Baker ("Baker"), Deputy Nicholas Starr ("Starr"), and Deputy Clayton Hillegeer ("Hillegeer") (collectively "Defendants"), alleges as follows:

## NATURE OF ACTION

1.      This is a civil rights action brought under 42 U.S.C. § 1983 to vindicate Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

2.      Plaintiff, a Rochester resident, was subjected to constitutional violations during an encounter with the Monroe County Sheriff's Department on January 5, 2024.

3.      Plaintiff was exiting a building at or around 1358 Dewey Ave., Rochester, New York 14613.

4.      The Monroe County Sheriff's Office, along with multiple additional agencies, including the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), were hiding outside of this location in multiple vehicles waiting to arrest Plaintiff, pursuant to alleged arrest warrants.

5.      Upon exiting the building Plaintiff was immediately approached by multiple officers, including Defendant Shawn Edwards, who was handling a K9 Unit ("K9").

6.      The defendants allowed Plaintiff to be attacked and bitten by the K9, despite the fact that he was unarmed, posed no threat to the officers, and made no attempt to escape or resist their orders.

7.      After being brought to the ground, the Defendants allowed the K9 continued to attack Plaintiff, at the explicit order of Edwards, for an extensive period before it was finally called off.

8. This excessive use of force violates established legal standards and use-of-force protocols and procedures, and Plaintiff suffered physical injuries and psychological trauma as a result of the attack.

9. Through this action, Plaintiff seeks: (1) compensatory damages for the harm caused by unconstitutional actions; (2) punitive damages to deter future violations; and (3) attorney's fees and costs under 42 U.S.C. § 1988.

## CONSTITUTIONAL AND STATUTORY FRAMEWORK

10. The Fourth Amendment to the United States Constitution protects individuals from the use of excessive force by law enforcement officers during the course of a stop, arrest, or detention.

11. Under the Fourth Amendment, any use of force by law enforcement must be objectively reasonable in light of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motivation.

12. The reasonableness of a use of force is evaluated under the standard set forth in *Graham v. Connor*, 490 U.S. 386 (1989), which considers, among other factors, the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting or attempting to evade arrest.

13. It is a violation of the Fourth Amendment for a law enforcement officer to use unreasonable force, including force against a person who is unthreatening, not resisting, or otherwise subdued. The continued use of force after a person has been restrained or is under control constitutes an unreasonable seizure.

14. An officer who observes another officer using excessive force and has a realistic opportunity to intervene but fails to do so violates the Fourth Amendment's protections against unreasonable seizures.

15. At all relevant times, Defendants were acting under color of state law and were obligated to comply with the requirements of the Fourth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION

16. This action is brought under 42 U.S.C. §§ 1983 and 1988, and under the Fourth and Fourteenth Amendments of the United States Constitution.

17. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983.

## VENUE

18. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Western District of New York because Defendants reside in this district and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## PARTIES

19. At all times hereinafter mentioned, Plaintiff, Dennis W. Garzone, was and is a citizen of the State of New York. He is currently incarcerated at the Monroe County Jail, 130 S. Plymouth Ave, Rochester, NY 14614.

20. Defendant, Sergeant Shawn Edwards, was and is a resident of the County of Monroe and the State of New York. At all times relevant hereto, he was employed as a Sergeant and K9 handler with the Monroe County Sheriff's Office. During the events described

in this Complaint, he was acting under color of state law. Edwards is being sued in his individual capacity for damages caused by his actions and/or conduct.

21. Defendant, Deputy Alexandra Baker, was and is a resident of the County of Monroe and the State of New York. At all times relevant hereto, she was employed as a Deputy with the Monroe County Sheriff's Office. During the events described in this Complaint, she was acting under color of state law. Baker is being sued in her individual capacity for damages caused by her actions and/or conduct.

22. Defendant, Deputy Nicholas Starr, was and is a resident of the County of Monroe and the State of New York. At all times relevant hereto, he was employed as a Deputy with the Monroe County Sheriff's Office. During the events described in this Complaint, he was acting under color of state law. Starr is being sued in his individual capacity for damages caused by his actions and/or conduct.

23. Defendant, Deputy Clayton Hillegeer, was and is a resident of the County of Monroe and the State of New York. At all times relevant hereto, he was employed as a Deputy with the Monroe County Sheriff's Office. During the events described in this Complaint, he was acting under color of state law. Hillegeer is being sued in his individual capacity for damages caused by his actions and/or conduct.

**FACTUAL BACKGROUND**

24. On January 5, 2024, Plaintiff was exiting a building at or around 1358 Dewey Ave., Rochester, New York 14613 ("The building").

25. At this time, Plaintiff allegedly had a warrant or warrants out for his arrest.

26. Upon information and belief, the Monroe County Sheriff's Office, working jointly with multiple additional agencies, including the ATF, had planned a coordinated operation to arrest Plaintiff at this location, pursuant to the alleged warrant or warrants.

27. At approximately 11:43 a.m., at least ten law enforcement officers were hiding in unmarked vehicles outside of the building, waiting for Plaintiff to exit.

28. Amongst these officers were Defendants Edwards, Baker, Starr, and Hillegeer, who were all in the same vehicle.

29. Edwards was handling a Monroe County Sheriff's Office K9. Upon information and belief, the K9 was a German Shepherd named Ike ("Ike").

30. At approximately 11:44 a.m., the Plaintiff had exited the building and was walking past the vehicles which contained the law enforcement officers, unaware that he was about to be apprehended. Plaintiff was unarmed.

31. Hillegeer gave the order to "execute," and all Defendants quickly exited the vehicle to arrest Plaintiff. Because Plaintiff was so close to the vehicle when the order was given, Ike was within biting distance of Plaintiff almost instantly.

32. Upon exiting the vehicle, Edwards shouted "Sheriff's K9, get on the ground!"

33. Within roughly one second of exiting the vehicle, Ike was already close enough to Plaintiff to bite or attack him.

34. Edwards made no attempt to restrain Ike, instead allowing Ike to continue moving closer without giving Plaintiff any time to process the arrest before significant force was deployed.

35. If Plaintiff had immediately gotten on the ground as Edwards had ordered, Ike would have been able to bite or attack Plaintiff's face, and it could reasonably be assumed that this would have occurred given Ike's proximity and immediately aggressive nature, and the fact that Edwards was doing nothing to restrain the animal.

36. Despite being visibly surprised and caught off guard, Plaintiff immediately raised both hands and turned to face the officers, indicating his surrender and intention to submit to arrest.

37. As shown in the body-worn camera footage of the arrest, Plaintiff's attention was focused on Ike and avoiding Ike's bite radius.

38. In a subsequent Canine Report, Edwards falsely claimed that Plaintiff "turned around multiple times as if he was going to run."

39. Plaintiff instinctively took multiple steps back to avoid being bitten by Ike. As he did so, his arms remained raised in surrender and his body remained facing the officers to the extent that it was possible whilst avoiding contact with Ike, thus indicating that he had no intention of fleeing.

40. Despite this, Edwards shouted, "Get on the ground, you're gonna get bit!" while continuing to allow Ike to move aggressively towards Plaintiff.

41. Within mere seconds of exiting the vehicle, Ike began biting Plaintiff and brought him to the ground. Only after contact was initiated and he was being bitten did Plaintiff's hands lower, a reflexive reaction to falling to the pavement.

42. Only as Ike brought Plaintiff to the ground and began attacking was Plaintiff's back ever fully turned to the officers.

43. As Ike continued to attack, Edwards shouted the command "Fass!" roughly four times.

44. "Fass" is a German term, which translates to "Bite," a common K9 command indicating that the handler is directly ordering the K9 to bite the subject.

45. Upon being brought to the ground, Ike bit Plaintiff's right arm, latching on tightly and violently shaking, or "ragging", Plaintiff's arm.

46. Plaintiff curled up in a ball on the ground in an attempt to protect himself as Ike continued biting and ragging his arm.

47. At least five officers immediately surrounded Plaintiff, physically restraining him and pointing their firearms at him as he lay curled up on the ground, still being attacked by Ike.

48. Throughout the attack, Plaintiff exclaimed in pain and repeatedly shouted "Alright, alright, alright," indicating his desire to submit to the arresting officers.

49. Officers demanded that Plaintiff "Get on his stomach," which he was not immediately able to do with a K9 actively latched on to his arm.

50. At no point did Plaintiff resist the officers or make any effort to flee.

51. Despite the complete lack of any threat or resistance posed by Plaintiff and the presence of more than enough manpower to restrain and arrest him without K9 force, Ike continued to bite and rag Plaintiff's arm for roughly 17 seconds before Edwards gave the release command.

52. Throughout this 17-second period, Edwards repeatedly informed the other officers who were apprehending Plaintiff to "watch yourself" and "watch your hands," thereby

confirming the significant force and threat posed by the K9, yet showed no concern for Plaintiff, who was actively being bitten and ragged.

53. Defendants Baker and Starr participated in the arrest, pointing their firearms at Plaintiff throughout the attack and making no attempt to intervene to stop or prevent this excessive use of force.

54. Defendant Hillegeer stood nearby on the sidewalk as he watched the incident, making no attempt to intervene to stop or prevent this excessive use of force.

55. After Ike was removed, Plaintiff continued to comply with all instructions as he was turned on to his stomach and handcuffed.

56. Plaintiff remained fully compliant and cooperative for the remainder of the arrest, although he was visibly shaken and physically injured by Ike.

57. Plaintiff sustained injuries and lacerations to his arm where he was repeatedly bitten by Ike.

58. Plaintiff suffered significant trauma as a result of this apprehension and the excessive and unconstitutional use of force by the Defendants.

### FIRST CAUSE OF ACTION

**Violation of the Fourth Amendment
Excessive Force (Deployment of K9) Under 42 U.S.C. § 1983
Against Defendants Edwards**

59. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

60. At all times relevant, Defendant Sergeant Shawn Edwards was acting under color of state law as a Sergeant and K9 handler with the Monroe County Sheriff's Office.

61. On January 5, 2024, Defendant Edwards intentionally deployed his K9 on Plaintiff, despite Plaintiff not posing an immediate threat to the safety of officers or others, not resisting, and not attempting to flee.

62. The decision to deploy the K9 constituted an unreasonable use of force under the circumstances in violation of Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution.

63. As a direct and proximate result of Defendant Edwards's conduct, Plaintiff suffered physical injury, pain, emotional distress, and other damages.

## SECOND CLAIM FOR RELIEF

### Violation of the Fourth Amendment
### Excessive Force (Duration of K9 Deployment) Under 42 U.S.C. § 1983
### Against Defendant Edwards

64. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

65. After the initial deployment of the K9, Plaintiff was subdued and posed no threat to the safety of officers or others.

66. Despite this, Defendant Edwards continued to permit or direct the K9 to bite and hold Plaintiff for an unreasonable duration.

67. The continued use of the K9 after Plaintiff was under control constituted excessive force and an unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

68. As a direct and proximate result of Defendant Edwards's conduct, Plaintiff suffered severe physical injuries, pain, emotional distress, and other damages.

## THIRD CLAIM FOR RELIEF

### Violation of the Fourth Amendment
### Failure to Intervene Under 42 U.S.C. § 1983
### Against Defendants Baker, Starr, and Hillegeer

69. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

70. Defendants Baker, Starr, and Hillegeer were present at the scene during the K9 deployment and observed Defendant Edwards's use of excessive force.

71. Defendants Baker, Starr, and Hillegeer had reason to know that Plaintiff's constitutional rights were being violated and had a realistic opportunity to intervene to prevent or curtail the use of excessive force.

72. Despite this opportunity, Defendants Baker, Starr, and Hillegeer failed to take reasonable steps to intervene and prevent or mitigate the unconstitutional conduct.

73. Defendants' failure to intervene caused and prolonged Plaintiff's injuries and violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

74. As a direct and proximate result of Defendants' failure to act, Plaintiff sustained the damages described herein.

## DEMAND FOR JURY TRIAL

75. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff, Dennis W. Garzone, prays for relief and demands judgment as follows:

76. That Plaintiff be awarded compensatory damages against all Defendants in an amount to be determined at trial;

77. That Plaintiff be awarded punitive damages against all individual Defendants in an amount to be determined at trial;

78. That this Court, pursuant to 42 U.S.C. § 1988, issue an order awarding Plaintiff's reasonable attorneys' fees, together with the costs of this action against all Defendants; and

79. That this Court award such other further relief, together with any other legal or equitable relief, or both, as the Court deems just and proper.

Dated:   November 19, 2025
         Buffalo, New York

**RUPP PFALZGRAF** LLC
*Attorneys for Plaintiff*

By: _____
    R. Anthony Rupp III, Esq.
    1600 Liberty Building
    Buffalo, New York  14202
    (716) 854-3400
    Rupp@RuppPfalzgraf.com